## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   JSS OF ALBUQUERQUE, LLC,                              No. 11-17-10092 JA

Debtor.

# MEMORANDUM OPINION

The State of New Mexico, acting through its Attorney General ("State"), requests the Court to enter an order determining that its enforcement action filed in state court against JSS of Albuquerque, LLC ("JSS") and its principal, Jesus M. Cano, falls within the police or regulatory power exception to the automatic stay. *See* Motion for Orders Determining State Court Proceeding is Not Stayed by Petitions for Relief ("Motion") – Docket No. 12. JSS opposes the Motion. *See* Objection to Motion for Stay Relief – Docket No. 16. JSS and the State briefed the issue. *See* Docket Nos. 38 and 39. The Court held a final hearing on the Motion on May 8, 2017 and took the matter under advisement. The Court later held a status conference on June 28, 2017 to learn about JSS's intended course of action in this Chapter 11 bankruptcy case and to clarify what relief the State is seeking from this Court. *See* Docket No. 48. The Court will grant the Motion in part, as set forth below.

BACKGROUND

JSS locates residential properties to sell to consumers. JSS acquires the properties from an "investor" or "investors" under real estate contracts (the "upstream real estate contracts") and resells the properties to consumers under wrap-around real estate contracts.[1] A substantial portion of the payments under the wrap-around real estate contracts is used to pay the upstream

---

[1] Under a wrap-around real estate contract ("wrap-around REC") on a home, the seller acquired its interest in the home under a separate real estate contract ("upstream REC") and uses monies received from the homeowner under the wrap-around REC to make payments under the upstream REC.

1

real estate contracts; JSS retains the difference between the upstream payment and the payment from the consumer to JSS. An escrow company divides the consumers' payments between payment on the upstream real estate contract and payment to JSS.

The State filed an action against JSS, Mr. Cano, and other unknown persons, in the Second Judicial District Court, County of Bernalillo, State of New Mexico as Case No. D-202-CV-2016-07636 ("State Court Action") on December 9, 2016. The State alleged in its Complaint that JSS and Mr. Cano unlawfully offered real estate services and defrauded unsophisticated home buyers in violation of three New Mexico consumer protection statutes.

JSS filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 18, 2017. *See* Docket No. 1. Jesus Cano, managing member of JSS, signed the petition. *See* Docket No. 2. The State filed the Motion on February 14, 2017. *See* Docket No. 12.

## DISCUSSION

I. *The New Mexico Statutes at Issue in the State Court Action*

The State's complaint filed in the State Court Action requested temporary and permanent injunctive relief, restitution, civil penalties, and equitable relief against JSS and Mr. Cano under 1) the New Mexico Real Estate Brokers and Salesman Licensing Laws ("NMREB"), N.M.S.A. 1978 § 61-29-1, *et seq.*; 2) the New Mexico Mortgage Loan Originator Licensing Act ("NMMLO"), N.M.S.A. 1978 § 58-21B-1, *et seq.*; and 3) the New Mexico Unfair Trade Practices Act ("NMUPA"), N.M.S.A. 1978 § 57-12-1, *et seq. See* Complaint for Temporary and Permanent Injunctive Relief, Restitution, Civil Penalties, and Equitable Relief ("Complaint") - Exhibit AG-1. Each of these statutes authorizes the State to pursue an action against violators to further the public interest of protecting New Mexican consumers. Section 57-12-8(A) of the NMUPA provides:

> Whenever the attorney general has reasonable belief that any person is using, has used, or is about to use any method, act, or practice which is declared by the Unfair Practices Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state alleging violations of the Unfair Practices Act.
>
> N.M.S.A. 1978 § 57-12-8(A) (2000 Repl. Pamp.).

Similarly, § 58-21B-21 of the NMMLO provides:

> Whenever the attorney general has reasonable belief that a person is using, has used or is about to use any method, act or practice in violation of the New Mexico Mortgage Loan Originator Licensing Act and enforcement proceedings would be in the public interest, the attorney general may bring an action in the name of the state alleging violations of that act.
>
> N.M.S.A. 1978 § 58-21B-21(A) (2016 Cum. Supp.).

Section 61-29-17(B) of the NMREB authorizes the attorney general, upon application to the New Mexico Real Estate Commission, to "maintain an action in the name of the state to prosecute the violation or to enjoin the proposed act or practice." N.M.S.A. 1978 § 69-12-17(B) (2016 Cum. Supp.).

The purpose of these statutes is to protect consumers. *See* NMUPA, N.M.S.A. 1978 § 57-12-2(E) (2016 Cum. Supp.) (defining "'unconscionable trade practice'" as "an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."); NMMLO, N.M.S.A. 1978 § 58-21B-2(A) ("The legislature also finds that it is essential for the protection of the residents of New Mexico and the stability of New Mexico's economy that reasonable standards for licensing and regulation of the business practices of mortgage loan originators be imposed."). NMMLO's stated purpose is "to protect consumers seeking mortgage

loans." N.M.S.A. 1978 § 58-21B-2(B) (2016 Cum. Supp.). Finally, NMREB makes it unlawful for a "person to engage in the business or act in the capacity of real estate associate broker or qualifying broker within New Mexico without a license issued by the commission." N.M.S.A. 1978 § 61-29-1 (2016 Cum. Supp.). To obtain a license, a person must "be of good repute and competent to transact the business of a qualifying broker or an associate broker in a manner that safeguards the interests of the public." N.M.S.A. 1978 § 61-29-9(A) (2016 Cum Supp.).

II. *The Relief the State Seeks and Has Obtained in the State Court Action*

The prayer for relief in the Complaint requests the following relief:

A. The court issue a temporary injunction restraining the Defendants from engaging in the conduct alleged herein.

B. The court issue an order freezing Defendants' assets related to the real estate services and home financing business activities JSS of Albuquerque, LLC until such time as a Receiver or neutral party can verify whether consumers were or were not victims of Defendants' enterprise.

C. For the appointment of a Receiver to manage the assets of JSS of Albuquerque, LLC related to its real estate and home financing business activities for later disgorgement and refund to the consumers harmed by Defendants' unlawful activities.

D. The court determine and adjudge that Defendants' real estate and home financing scheme violated the NMRELA [NMREB], the NMMLOLA [NMMLO], and the NMUPA.

E. The court determine and adjudge Defendants' real estate and home financing scheme is fraudulent.

F. The court issue a permanent injunction restraining the Defendants from engaging in conduct which is found to be unlawful pursuant to the NMRELA [NMREB], the NMMLOLA [NMMLO], and the NMUPA.

G. The court rescind all of Defendants' real estate services and home financing contracts and all real estate contracts associated with the same or similar unlawful business scheme.

H. The court order the Defendants to pay restitution to all persons for any monies which were acquired through any practice found to be unlawful pursuant to the NMMLOLA [NMMLO] and the NMUPA.

I. The court order Defendants to disgorge all moneys collected pursuant to real estate services and home financing contracts and pursuant to any real estate contracts associated with the same or similar unlawful business scheme.

J. The court order the Defendants to pay to the State of New Mexico a civil penalty of up to FIVE THOUSAND DOLLARS ($5,000.00) per willful violation of the NMRELA [NMREB] and the NMUPA.

K. The court determine and adjudge that Cano is personally liable, as a corporate owner, officer, or manager having knowledge and authority to direct the acts of JSS, for any violations of the NMRELA [NMREB], the NMMLOLA [NMMLO], and the NMUPA by JSS.

L. The court order Defendants to reimburse the New Mexico Office of the Attorney General for its attorney[s'] fees and costs incurred in the investigation and prosecution of this matter.

M. For such other relief as the Court deems just and proper.

Complaint, pp. 46 – 48.

On December 15, 2016, the State obtained an Order Granting Permanent Injunction ("Permanent Injunction") in the State Court Action. *See* Exhibit AG-2. Among other things, the Injunction prohibits JSS and Mr. Cano from the following:

> Offer[ing] to sell any property, enter into a real estate contract or engage in the sale of any real estate or home related services to consumers;
>
> Tak[ing] any legal action with respect to any property related to this matter, including, but not limited attempting to evict any inhabitant of the properties related to this matter; and
>
> Solicit[ing] real estate and home related insurance business from the public.

Permanent Injunction, ¶¶ 2, 3, and 4.

The Permanent Injunction includes the following provision:

> Defendants may contact inhabitants for the limited and sole purpose of collecting December 2016 and January 2017 contract payments. Collection of all contract payments from February until the conclusion of this matter, shall be determined by further order of the court.

Permanent Injunction, ¶ 6.

III. *The Automatic Stay and its Police or Regulatory Power Exception*

Upon the filing of a bankruptcy petition, the stay imposed by 11 U.S.C. § 362(a) arises automatically "to protect the debtor from and his creditors by allowing the debtor to organize his affairs, and by ensuring that the bankruptcy procedure may operate to provide an orderly resolution of all claims." *Pursifull v. Eakin,* 814 F.2d 1501, 1504 (10th Cir. 1987) (citing *Fortier v. Dona Ana Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir. 1984)). Among other things, the automatic stay prohibits:

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . .; [and]
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1) and (3).

One exception to the automatic stay, found in 11 U.S.C. § 362(b)(4), exempts governmental units from operation of the automatic stay when exercising the government's police or regulatory power. It provides, in relevant part:

> The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
>> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. § 362(b)(4).

JSS concedes that the State is a governmental unit for purposes of 11 U.S.C. § 362(b)(4).

As a general matter, consumer protection is a valid exercise of police or regulatory power for purposes of §362(b)(4). *See, e.g., In re First Alliance Mortg. Co.,* 263 B.R. 99, 108 (9th Cir. BAP 2001) ("From legislative history and case law, it is well-established that consumer protection is a valid exercise of the police and regulatory power for purposes of §362(b)(4)."); *In re Draughon Training Institute, Inc.,* 119 B.R. 921, 924 (Bankr. W.D. La. 1990) ("Consumer protection is a valid exercise of police and regulatory power for purposes of the Section 362(b)(4) exemption from the automatic stay."). *See also In re Commonwealth Companies, Inc.,* 913 F.2d 518, 525 (8th Cir. 1990) (observing that "the legislative history of § 362(b)(4) explicitly recognizes that a fraud law is a police or regulatory law.").

The Tenth Circuit has identified two tests to determine whether a governmental unit's action is exempt from the automatic stay as an exercise of its police or regulatory power: 1) the "pecuniary purpose" test; and 2) the "public policy" test. *Eddleman v. United States Dep't of Labor,* 923 F.2d 782, 792 (10th Cir. 1991), *overruled in part on other grounds by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson,* 968 F.2d 1003, 1005 n.3 (10th Cir. 1992). These two tests are interrelated. *McMullen v. Sevigny (In re McMullen),* 386 F.3d 320, 325 (1st Cir. 2004).[2] The "pecuniary purpose" test questions "whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy." *Eddleman,* 923 F.2d at 791 (citations omitted). If the primary purpose of the government's action is to protect a pecuniary interest of a governmental unit, the action remains subject to the stay. *Id.* "[T]he 'public policy' test distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating

---

[2] *But cf. City & Cnty. of San Francisco v. PG & E Corp.,* 433 F.3d 1115, 1123-24 (9th Cir. 2006) (referring to the two tests as "alternative tests" and stating that "[s]atisfaction of either test will suffice to exempt the action from the reach of the automatic stay.") (citing *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1108 (9th Cir. 2005)).

private rights." *Id.* (citation omitted). Only actions of a governmental unit aimed at effectuating public policy fall within the exception; "actions taken for the purpose of advancing private rights are not excepted from the stay." *Id.*

"These tests derive from a statement made by Representative Don Edwards, . . . who stated that the exception 'is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate'" *In re First Alliance Mortg. Co.*, 264 B.R. 634, 646 (C.D. Ca. 2001) ("*DC First Alliance"*) (quoting 124 Cong. Rec. H11, 089, *reprinted in* 1978 U.S.C.C.A.N. 6436, 6444-45). *See also, Commonwealth,* 913 F.2d at 524 (the pecuniary interest language originates from remarks made during the floor debates on the Bankruptcy Reform Act) (citation omitted). The House Report accompanying the 1978 revisions to the Bankruptcy Code gives the following explanation of the police and regulatory power exception to the automatic stay:

> Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

> H.R.Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299.

IV. *Case law on Whether Claims under New Mexico Consumer Protection Statutes Primarily Vindicate a Public Interest or Confer a Private Benefit*

Similar to the public policy test used to determine whether a state's action falls within § 362(b)(4)'s exception to the automatic stay, the New Mexico Supreme Court, in a different context, provides guidance for distinguishing between state statutory enforcement actions under consumer protection statutes that vindicate a broader public interest and state actions that seek a remedy solely conferring a private benefit. In *Rex, Inc. v. Manufactured Hous. Comm. of the*

*State of N.M., Manufactured Hous. Div.,* 119 N.M. 500, 508, 409, 892 P.2d 947, 955 (1995), the New Mexico Supreme Court identified a "public interest-private benefit distinction" between certain types of claims brought by a state agency to enforce New Mexico statutes aimed at protecting public welfare. The *Rex* court found that when a state agency enforces a statutory scheme to "vindicate a broader public interest protected under the statute," the agency is not in privity with the individual complainant for purposes of applying collateral estoppel. *Id.* at 508. In contrast, "when the agency is acting solely for the private benefit of the complaining individual and is seeking a remedy which only benefits that individual," the agency "is in privity with that claimant and may be barred under the doctrine of collateral estoppel" from re-litigating the individual's claim in a subsequent action." [3] *Id.* at 508 and 509. Based on this distinction, the *Rex* court found that the state agency's decision to suspend Rex, Inc.'s mobile home dealer's license based on a violation of the Manufactured Housing Act "vindicate[d] an important public interest." *Id.* at 509. However, the court found that the state's public interest in enforcing the Act by seeking a monetary award requiring Rex, Inc. to pay a particular individual aggrieved by the statutory violation was "minimal." *Id.* The *Rex* court therefore concluded that collateral estoppel barred the agency from obtaining a monetary judgment based on a statutory violation that had already been resolved through the prior arbitration of the individual's claim.[4]

New Mexico federal district courts have applied *Rex* to various New Mexico consumer protection statutes, including the NMUPA. *See, e.g., New Mexico v. Capital One Bank (USA) N.A.,* 980 F.Supp.2d 1346, 1349 (D.N.M. 2013) (NMUPA and "a federal disclosure regulation under the Dodd-Frank Act known as Regulation Z"); *King v. HSBC Bank Nevada, N.A.,* 2013

---

[3] Assuming all other elements of collateral estoppel, in addition to privity, have been satisfied.
[4] In *Rex*, the Court examined federal case law making a public interest-private benefit distinction to determine whether claims brought by the Equal Employment Opportunity Commission were barred under claim or issue preclusion. *Rex*, 119 N.M. at 507-509.

WL 12138908 (D.N.M. Dec. 16, 2013) (NMUPA). In *Capital One,* the court found that by pursuing consumer relief claims in the form of restitution to individual consumers, the state represented "an exclusively private interest" and was not "seeking to punish or deter Defendants from similar conduct in the future." 980 F.Supp.2d at 1353. Similarly, in *HSBC Bank,* the court found that the state's request for monetary recovery on behalf of New Mexico consumers based on a violation of the NMUPA predominated over the state's public interest in enforcing the statute. *See HSBC Bank,* 2013 WL 12138908 at *3 (observing that "[i]t is undisputed that when a state agency brings a claim pursuant to a statutory scheme in order to vindicate the state's public interest, it is not in privity with consumers." However, by "seeking monetary recovery on behalf of New Mexico consumers, [the state was] not only pursuing a regulatory action to vindicate the state's public interest."). Based on the determination that the state's requests for monetary relief primarily benefitted individual consumers, rather than furthering public policy interests, the *HSBC Bank* court and the *Capital One* court both concluded that the state was in privity with the individual consumers for purposes of applying preclusion principles. *HSBC Bank,* 980 F.Supp.2d at 1353; *Capital One,* 2013 WL 12138908 at *3.

> V. *Whethe*r *the State's Particular Requests for Relief in the State Court Action Fall Within the Police or Regulatory Power Exception*

The Court looks to the contents of the complaint and the relief requested, not to the merits of the claims, to determine whether the police or regulatory power exemption to the automatic stay applies. *See Diaz v. State of Texas (In re Gandy),* 327 B.R. 796, 805 (Bankr. S.D. Tex. 2005) (stating that, in determining whether the stay applies, the court does not consider the merits of the claims, but "only looks to the four corners of the complaint to determine if the purpose of the litigation by the governmental unit is to enforce its police and regulatory powers."). Whether the State can prevail in the State Court Action is generally irrelevant to the

-10-

Court's determination of whether the exception to the automatic stay applies. *Id.* (stating that the "Court should not examine the merits of the litigation.").

The Court will apply the guidelines established in *Rex* and cases applying *Rex* to determine whether each of the State's requests for relief in the Complaint filed in the State Court Action falls within the police or regulatory power exception to the automatic stay. Under the principals explicated in *Rex,* the State's claims under New Mexico consumer protection statutes to determine whether specific conduct violates the statutes, to obtain injunctive relief to prevent statutory violations, to suspend a license, and to impose civil penalties for statutory violations, vindicate the State's public interest by protecting the public, punishing the wrongdoer, and deterring future violations. On the other hand, the State's claims to obtain personal remedies for consumers aggrieved by violations of the statutes, such as money damages, rescission, and restitution, primarily advance private interests. Thus, consistent with *Rex* and Tenth Circuit case law regarding the scope of the police or regulatory power exception to the automatic stay, the State's claims in the first category fall within the police or regulatory power exception, whereas those in the second category do not.

The lettered paragraphs below are taken from the prayer for relief in the Complaint.

A. The Court issue a temporary injunction restraining the Defendants from engaging in the conduct alleged herein.

In light of the Permanent Injunction, this request for relief is now moot. The Court need not determine whether this action falls within the police and regulatory exception to the automatic stay.

B. The court issue an order freezing Defendants' assets related to the real estate services and home financing business activities JSS of Albuquerque, LLC until such time as a Receiver or neutral party can verify whether consumers were or were not victims of Defendants' enterprise.

-11-

C. For the appointment of a Receiver to manage the assets of JSS of Albuquerque, LLC related to its real estate and home financing business activities for later disgorgement and refund to the consumers harmed by Defendants' unlawful activities.

The State represented to the Court at the status conference that it does not intend to seek the appointment of a receiver in the State Court Action at this time. The Court need not, therefore, determine whether §362(b)(4)'s exception applies to these two requests for relief.

D. The court determine and adjudge that Defendants' real estate and home financing scheme violated the NMRELA [NMREB], the NMMLOLA [NMMLO], and the NMUPA.

This request for relief falls within the police or regulatory exception to the automatic stay under both the "pecuniary interest" test and the "public policy" test. By enforcing these types of consumer protection statutes through declaratory relief, the State is carrying out the statutes' public policy, not pursuing its own pecuniary interest in JSS or JSS's property. Nor does the declaratory relief requested adjudicate private rights. This request therefore falls within § 362(b)(4)'s exception to the automatic stay. *Cf. In re Nelson,* 240 B.R. 802 (Bankr. D. Me. 1999) (state's action for alleged violations of Maine's Unfair Trade Practices Act and Consumer Solicitations Sales Act covered by § 362(b)(4)); *In re Asset Control Co. of North Carolina,* 90 B.R. 192, 195 (Bankr. D.S.C. 1988) (concluding that suit against debtor for alleged violations of state's consumer protection laws and usury laws fell within § 362(b)(4)'s exception, reasoning that "the state's suit not only benefits specific individuals but furthers an articulated public interest in preventing and deterring unfair or deceptive commercial conduct and usurious lending practices.").

E. The Court determine and adjudge Defendants' real estate and home financing scheme is fraudulent.

Similar to the previous request, this request for relief simply requests a declaratory judgment regarding whether JSS violated the statutes. Though it is not tied to a specific

-12-

consumer protection statute, the entire Complaint is based on the consumer protection statutes identified above. The Court concludes that the State's request for a determination that JSS's real estate and home financing scheme is fraudulent is aimed at protecting the public and will effectuate public policy. The request is, therefore, a proper exercise of the State's police and regulatory power.

> F. The Court issue a permanent injunction restraining the Defendants from engaging in conduct which is found to be unlawful pursuant to the NMRELA [NMREB], the NMMLOLA [NMMLO], and the NMUPA.

The issuance of the Injunction before JSS filed its bankruptcy case renders this request for relief moot. The Court need not determine whether a request for permanent injunction falls within the exception to the automatic stay.

> G. The Court rescind all of Defendants' real estate services and home financing contracts and all real estate contracts associated with the same or similar unlawful business scheme.

None of the consumer protection statutes upon which the State bases its claims expressly includes rescission as a potential remedy. Rescission is an equitable remedy that attempts to return the parties to the position they were in before they entered into the contract. *See City of Raton v. Arkansas River Power Authority,* 611 F.Supp.2d 1190, 1198 (D.N.M. 2008) ("'Rescission is an equitable remedy which seeks to restore the status quo ante'") (quoting *Ledbetter v. Webb,* 103 N.M. 597, 600, 711 P.2d 874, 877 (1985)). "The defrauded party must return or offer to return that which has been received under the contract as a condition precedent to maintaining a suit for rescission." *Ledbetter,* 103 N.M. at 601 (citing *Prudential Ins. Co. of America v. Anaya,* 78 N.M. 101, 106, 428 P.2d 640, 645 (1967)). Here, if the State obtains a judgment against JSS to rescind the real estate contracts, the consumers would need to return the property to JSS. Applying the public interest-private benefit distinction made in *Rex*, the State's

prosecution of a rescission claim is made primarily to further a private interest, and, therefore, does not constitute an exercise of the State's police or regulatory power within the meaning of § 362(b)(4).[5]

> H. The Court order the Defendants to pay restitution to all persons for any monies which were acquired through ay practice found to be unlawful pursuant to the NMMLOLA [NMMLO] and the NMUPA.
>
> I. The Court order Defendants to disgorge all moneys collected pursuant to real estate services and home financing contracts and pursuant to any real estate contracts associated with the same or similar unlawful business scheme.

Restitution and disgorgement claims have a monetary component, and, if awarded, directly benefit the consumers JSS allegedly defrauded.[6] Consistent with *Rex,* the Court finds

---

[5] Other courts have held that a rescission claim falls within the police or regulatory power exception to the automatic stay. In *F.T.C. v. Ameridebt, Inc.,* 343 F.Supp.2d 451 (D. Md. 2004), the district court rejected the debtor's arguments the FTC's request for rescission and restitution was subject to the automatic stay because it constituted an adjudication of private consumer rights, exercised control over the bankruptcy estate, and would diminish the debtor's primary assets. *Ameridebt,* 343 F.Supp.2d at 458. Instead, the district court found that the "obvious purpose" of the FTC's action and the Federal Trade Commission Act it sought to enforce is "protection of the public welfare and the effectuation of public policy respecting the credit counseling industry." *Id.* The *Ameridebt* court therefore concluded that the remedies sought by the FTC fit within § 362(b)(4)'s exception to the automatic stay because such "claims for rescission, restitution and disgorgement would primarily serve the public purposes of justice and deterrence" "[r]egardless of whether private rights of consumers may be adjudicated in some fashion." *Id.* at 458-59.

[6] Because a restitution award benefits a private individual, at least one court has concluded that restitution claims based on a violation of consumer protection statutes constituted an adjudication of private rights that remained subject to the automatic stay. *See, In re Charter First Mortgage, Inc.,* 42 B.R. 380, 382-85 (Bankr. D. Or. 1984). *Cf, In re Dunbar,* 235 B.R. 465, 475 (9th Cir. BAP 1999) ("To the extent the state agency instituted proceedings to seek restitution . . . for . . . violations of the Business and Professions Code in that amount, such state actions are not excepted from the automatic stay") (citation omitted); *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374, 391 (6th Cir. 2001) (action under the Fair Labor Standards Act that merely sought to recover unpaid minimum wages, unpaid overtime, and liquidated damages did not come within the exception because such action only incidentally served the public interest). *But cf. Eddleman,* 923 F.2d at 791 (declining to characterize the Department of Labor's request to liquidate back-pay claims for specific individuals as an assertion of private rights, and concluding that such action "was but another method of enforcing the policies underlying the [Service Contract Act,]" satisfying § 362(b)(4)'s public policy test).

Other courts find that restitution claims can fall within the police or regulatory power exception, noting that the pecuniary component does not automatically disqualify a restitution claim from the protection of 11 U.S.C. § 364(b). *See, e.g., PG & E Corp.,* 433 F.3d at 1126 (recognizing that although a governmental entity's request for restitution "may well result in money being paid to private parties . . . . restitution claims filed by the governmental entities [to enforce California's Unfair Competition Law] . . .

that the State's public interest in asserting claims for restitution and disgorgement is minimal. Restitution and disgorgement primarily benefit the individual consumers allegedly harmed by JSS's violation of these consumer protection statutes. The Court, therefore, concludes that the State's requests for restitution and disgorgement do not fall within the police or regulatory power exception to the automatic stay.

> J. The Court order the Defendants to pay to the State of New Mexico a civil penalty of up to FIVE THOUSAND DOLLARS ($5,000.00) per willful violation of the NMRELA and the NMUPA.

Civil penalties serve to punish past violations. *DC First Alliance,* 264 B.R. at 649. Imposing civil penalties can also deter future violations. Thus a request for civil penalties as part of an enforcement action for violation of consumer protection statutes primarily protects the public, rather than serving the State's pecuniary interests, and is not subject to the automatic stay. *See Commonwealth,* 913 F.2d at 524-25 (explaining that "'[i]t is generally the case that the government regulates private conduct by establishing penalties for certain violations of rules it prescribes. This does not mean that when it seeks to enforce the regulatory scheme in question, it is merely seeking to protect some 'pecuniary interest . . .'") (quoting *CPI Crude, Inc. v. United States Dep't of Energy,* 77 B.R. 320, 323 (D.D.C. 1987) (remaining citations omitted)). The adjudication of the amount of the civil penalties against JSS for violation of these consumer protection statutes falls within § 362(b)(4)'s exception.

> K. The Court determine and adjudge that Cano is personally liable, as a corporate owner, officer, or manager having knowledge and authority to direct the acts of JSS, for any violations of the NMRELA, the NMMLOLA, and the NMUPA by JSS

---

are fundamentally law enforcement actions designed to protect the public. As such, the restitution claims . . . satisfy the 'public policy test.'"); *DC First Alliance,* 264 B.R. at 650 (observing "that restitution has a pecuniary component does not mean it is outside the exception.") (citation omitted).

The State's request to enforce any liability against JSS's principal is not automatically stayed by the filing of JSS's bankruptcy case. *See Fleet Business Credit, L.L.C. v. Wings Restaurants, Inc.,* 291 B.R. 550, 553 (N.D. Okla. 2003) ("The general rule in the Tenth Circuit is that '[w]hile § 362 extends the stay provisions of the Bankruptcy Code to the 'debtor,' . . . the stay provision does not extend to solvent codefendants of the debtor.") (quoting *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 141 (10th Cir. 1994) (remaining citations omitted)).[7] Mr. Cano also filed a voluntary petition for bankruptcy, but the State obtained a default order granting relief from the automatic stay in Mr. Cano's bankruptcy case. *See* Case No. 13-17-10085 TA, Docket No. 34. The Court need not, therefore, determine whether the exception applies in JSS's bankruptcy case with respect to the State's request for relief against JSS's principal.

> L. The Court order Defendants to reimburse the New Mexico Office of the Attorney General for its attorneys' fees and costs incurred in the investigation and prosecution of this matter.

The State has not tied its request for attorneys' fees to any statutory provision in the consumer protection laws it seeks to enforce in the State Court Action. Nor has the Court found any. If the State's entitlement to attorneys' fees arises under the consumer protection statutes it seeks to enforce, and such fees were incurred in prosecuting claims covered by the police or regulatory power exception to the automatic stay, the exception to the automatic stay would extend to its request for fees. *Cf. Massachusetts v. New England Pellet, LLC,* 409 B.R. 255, 259

---

[7] It is possible to extend the automatic stay to a non-debtor party, "'when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real defendant and that judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Blodgett,* 24 F.3d at 141 (quoting *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986)). The Court need not consider this issue for two reasons: 1) Mr. Cano has not requested protection of the automatic stay in JSS's bankruptcy case; and 2) the stay has already been lifted in Mr. Cano's individual bankruptcy case to allow the State Court Action to proceed.

(D. Mass. 2009) (applying the § 362(b)(4) standards to conclude that action to enforce state's consumer protection statute requesting injunctions, civil penalties, attorneys' fees and restitution was a proper exercise of the states police or regulatory powers not subject to removal under 28 U.S.C. § 1452(a)). But here, where it is unclear what the State's request for attorneys' fees is based upon, the State has not demonstrated that such request falls within the exception to the automatic stay.

    M. For such other relief as the Court deems just and proper.

This catchall request for relief has no parameters from which the Court can ascertain whether the exception applies; the request is simply too broad and open ended. The Court therefore cannot ascertain to what extent this request for relief falls within § 362(b)(4)'s exception.

    VI. *JSS's Counter-Arguments*

JSS offers two arguments in defense of the State's Motion: 1) JSS is no longer conducting any of the business activity that formed the basis of the State's Complaint, so continuation of the State Court Action is unnecessary; and 2) the Bankruptcy Court, rather than the State Court, should determine any damages amount through the claims adjudication process. The Court will address each argument in turn. First, JSS's discontinuation of the business activity that formed the basis of the State's Complaint is not a reason to prevent the State Court Action from proceeding through judgment as an appropriate exercise of the State's police or regulatory power. *See Gandy,* 327 B.R. at 806 ("Simply because a defendant has ceased the alleged offensive conduct does not remove a governmental unit's ability to prosecute under its policy and regulatory power.") (citation omitted); *DC First Alliance,* 264 B.R. at 648 (explaining that "the regulatory and police powers exception is not limited to situations in which future harm

must be stopped.  It includes actions to fix the amount of damages for past conduct, whether or not that conduct is continuing.") (citation omitted).

Second, the legislative history of the exception contemplates the fixing of a damages amount as part of the state court enforcement proceeding.  *See,* H.R.Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299 (where the action is "attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.").  Determining the amount of damages merely establishes the amount of the claim against JSS's bankruptcy estate.  *See Commonwealth,* 913 F.2d at 524 (explaining that entry of a money judgment in a state court action otherwise excepted from the automatic stay "simply fix[es] the amount of the government's unsecured claim" and does "not convert the government into a secured creditor, force payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate.").   The State may obtain a money judgment for civil penalties in the State Court Action.

Enforcement of a money judgment for civil penalties is a separate issue.  The State agrees that any enforcement of a liquidated judgment remains subject to the automatic stay. *See* 11 U.S.C. § 362(b)(4) (the exception is limited to "enforcement of a judgment *other than a money judgment . . .*"); *S.E.C. v. Brennan,* 230 F.3d 65, 71 (2nd Cir. 2000) (stating that "anything beyond the mere entry of a money judgment against a debtor is prohibited by the automatic stay"); *Travacom Communications, Inc. v. Commonwealth of Pennsylvania (In re Travacom Communications, Inc.),* 300 B.R. 635, 638 (Bankr. W.D. Pa. 2003) ("[B]ecause the Bankruptcy Code draws a distinction between entry and enforcement of a money judgment, allowing entry but not enforcement, a governmental agency does not run afoul of an automatic stay by reducing such damages, once they are liquidated, to judgment, provided of course, that such agency

refrains from then attempting to enforce such judgment.") (internal citations, emphasis, and quotation marks omitted).

VII. *The Permanent Injunction*

The Permanent Injunction was entered five days after commencement of the State Court Action with JSS's consent. Paragraph 6 provides:

> Defendants may contact inhabitants for the limited and sole purpose of collecting December 2016 and January 2017 contract payments. Collection of all contract payments from February 2017 until the conclusion of this matter, shall be determined by further order of the court.
>
> Injunction, ¶ 6

Under this provision, JSS's collection of payments under the wrap-around real estate contracts after February of 2017 requires further order of the state court. This Court questioned whether enforcement of the provision is subject to the automatic stay. Neither the State nor JSS directed the Court to any case law on the issue. The State has not demonstrated that this provision of the Permanent Injunction is designed to prevent continuing violations of the consumer protection statutes at issue as opposed to providing relief to consumers harmed by statutory violations. The Court therefore concludes that the State has not met its burden to show that enforcement of the provision in the Permanent Injunction that requires JSS to obtain further orders of the State Court to collect wrap around real estate contract payments after February 2017 falls within § 362(b)(4)'s exception.

CONCLUSION

The State's prosecution of the State Court Action, including the adjudication of its requests for declaratory and injunctive relief and liquidation of civil penalty amounts under the NMUPA, NMMLO and NMREB, constitutes a proper exercise of the State's police and regulatory powers to protect the citizens of the State of New Mexico. Such claims are excepted

under § 362(b)(4) from the operation of the automatic stay. The State's requests for restitution, disgorgement, and rescission, however, primarily adjudicate private rights. Consistent with New Mexico case law, such claims fail to satisfy the public policy test under *Eddleman*. Consequently, those claims do not fall within § 362(b)(4)'s exception. The State has not met its burden to show that enforcement of the provision in the Permanent Injunction that requires the JSS to obtain further orders from the State Court to collect wrap around real estate contract payments after February 2017 falls within § 362(b)(4)'s exception. The State may file a motion in this Court requesting relief from the automatic stay to pursue its claims for restitution, disgorgement, and rescission or to seek other relief in in the State Court Action. If the State obtains a money judgment for civil penalties in the State Court Action, the State must return to the Bankruptcy Court; collection of any money judgment for civil penalties is stayed under § 362(a). The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 10, 2017

COPY TO:

Michael K Daniels
Attorney for JSS of Albuquerque, LLC
PO Box 1640
Albuquerque, NM 87103-1640

James C. Jacobsen
Attorney for State of New Mexico
201 Third Street Suite 300
Albuquerque, NM 87102

Case 17-10092-j11   Doc 61   Filed 08/10/17   Entered 08/10/17 16:39:52 Page 20 of 20